USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/4/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAWANDA C.,

Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**25-CV-6382 (KHP)**

**OPINION AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiff Shawanda C. ("Plaintiff"), represented by counsel, commenced this action against Defendant, Commissioner of the Social Security Administration (the "Commissioner"), pursuant to Section 205(g) and/or Section 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff seeks review of the Commissioner's decision that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act and, therefore, not entitled to disability insurance benefits ("DIB") from February 8, 2023, the onset date of her alleged disability.

## BACKGROUND

### I. Procedural History

#### A. Plaintiff's Current Application

Plaintiff, who is 44 years old, is fluent in English, completed up to the ninth grade in schooling,[1] and worked most recently for a security company and as a home health aide.[2] (ECF

[1] Plaintiff noted that she purportedly received special education for reading problems and understanding from September 1992 through June 1998. (ECF No. 8 ("Admin. Record") at 231).

[2] Plaintiff had approximately $4,423.00 in earnings from an undisclosed employer in 2009. *Id.* at 217. Plaintiff also reported working in a residential home and supermarket in 2002, as a home health aide in 2006 and 2012, and for a security company in 2008 and 2009. *Id.* at 231–32.

No. 8 ("Admin. Record") at 213–18, 227). Since 2012, Plaintiff has not had any reported earnings. *Id.* at 213–18. Although Plaintiff ceased working in 2012 to care for her special needs child, she noted that her conditions became severe sometime thereafter, such that she could not return to work.[3] *Id.* at 226. Plaintiff has had migraines since she was a teenager, as well as high stress levels, feelings of being overwhelmed, nausea, and blurred vision. *Id.* at 239. She also cannot stand or sit for long periods due to pain from her herniated disc and reports diagnoses of anxiety and depression. *Id.* at 242–43. From the time Plaintiff wakes up, she helps her special needs daughter get ready for school and provides caretaking for her daughter. *Id.* at 243. However, due to her mental health, her socializing has decreased, and she generally only goes out for doctors' appointments.[4] *Id.* at 244. Plaintiff also reported heightened anxiety, a decrease in her attention span (approximately twenty minutes), and an inability to be active for more than five to ten minutes. *Id.* at 245.

As it relates to the instant application, Plaintiff applied for supplemental social income ("SSI") on February 8, 2023, initially alleging disability as of December 1, 2017. *Id.* at 97–98. Plaintiff's initial claim was denied on May 23, 2023. *Id*. at 114. This decision was affirmed at the reconsideration level on December 19, 2023. *Id.* at 124. Following this denial, Plaintiff requested a hearing before an ALJ. *Id.* at 150.

On June 4, 2024, Plaintiff, with counsel, appeared for a telephonic hearing[5] before Administrative Law Judge ("ALJ") Michael J. Stacchini. *Id.* at 31. Plaintiff's attorney indicated at

[3] As outlined later, this date was later amended to February 8, 2023, by Plaintiff's counsel. *Id.* at 14, 40.
[4] Plaintiff indicated that she does not drive herself to these appointments but uses medical transportation. *Id.* at 251.
[5] The hearing record indicates that the claimant appeared in person, but the ALJ's statements regarding conduct on a telephone line, indicate that the hearing was conducted telephonically. *Id.* at 35–36.

the hearing that a brief, along with additional, outstanding evidence would be submitted for the record, and that the alleged onset date was being amended from 2017 to February 2023. *Id.* at 33–36.[6] Plaintiff testified at the hearing, along with a vocational expert ("VE"). *Id.* at 32. Plaintiff testified that she was the sole caretaker of her fourteen-year-old daughter with special needs, that she had close relationships with her mother and sister, and that her oldest daughter takes her food shopping. *Id.* at 36–43. Plaintiff also testified that she engaged in light cleaning and cooking. *Id.* at 41. Plaintiff also testified about her neck, back, knee, and foot pain and her migraines. *Id.* at 44–46. The VE testified following the proposition of a hypothetical[7] from the ALJ regarding Plaintiff's residual functional capacity ("RFC"). *Id.* at 49–54. The VE identified several occupations that qualified at the light exertional level including "cleaner housekeeping," "order filler," and "routing clerk."[8] *Id.* at 50–51. The ALJ followed up with a second hypothetical, limited only to sedentary work, after which the VE identified another three jobs including "porter," "document preparer," and "addresser." *Id.*[9]

On August 15, 2024, the ALJ denied Plaintiff's application for benefits on the grounds that Plaintiff was not disabled. *Id.* at 24. On September 9, 2024, Plaintiff requested a review by the Appeals Council. *Id.* at 64. On July 15, 2025, Plaintiff's request for review by the Appeals Council was denied. *Id.* at 1. Plaintiff then filed this action on August 4, 2025. (ECF No. 1).

---

[6] Specifically, Plaintiff's attorney indicated that they were waiting on records from Sun River Mental Health and Plaintiff's primary care physician, Crystal Run. *Id.* at 35.

[7] The hypothetical incorporated the limitations in Plaintiff's calculated residual functional capacity ("RFC") including the following: Plaintiff "would not climb ladders, ropes or scaffolds, with occasional balancing, stooping, kneeling, crouching and crawling with up to frequent reaching, handling, and fingering" and "would be able to understand, remember and carry out simply tasks throughout the eight-hour workday with regular breaks at approximately two-hour intervals." *Id.* at 49.

[8] The ALJ further clarified that these occupations could be completed with "limited" and "occasional interaction with the public, coworkers and supervisors." *Id.* at 50.

[9] Plaintiff's attorney raised a few questions here regarding Plaintiff's limited neck mobility and the suggested occupations. *Id.* at 52–54.

B. Plaintiff's Previous Claim

Plaintiff previously filed an application for SSI on April 21, 2014, with her disability purportedly beginning on July 1, 2009. *Id.* at 74. This claim was denied on July 7, 2014, and Plaintiff requested a hearing which was held on March 17, 2016. *Id.* The ALJ denied the claim. Notably, the ALJ's decision in the prior proceeding referenced records regarding mental health treatment, including information from Plaintiff's then therapist and indications that she responded well to mental health medications, including Cymbalta, Trazodone, and Wellbutrin. *Id.* at 78–85.

## II. Medical History

The Administrative Record contains information from a variety of providers during the relevant period including family medicine practitioners, a neurologist, a cardiologist, and a physical therapist for her various physical and mental impairments. The majority of her treatment appears to have been provided by Sun River Health. She also was treated at Orthopedic Associates, primarily for neck and back pain in 2022, and at Crystal Run Healthcare, where she was treated for dizziness and facial numbness during the relevant period. Although the record contains information about various physical impairments and treatment, it contains little information about mental health treatment. The name of past or present prescribing psychiatrists is nowhere to be found in the record, nor is the name or provider of any recurring mental health therapy or counseling. During the period 2022 through the date of the August 2024 hearing, the records from Sun River Health provide only a glimpse of her mental health impairments and treatment.

Plaintiff was primarily seen by Dr. Sumitra Dhanyamraju, a family medicine doctor, at Sun River Health, where regular screenings were provided regarding her anxiety and depression and other concerns including her neck and back pain were addressed. In early 2022, Plaintiff's anxiety and depression screenings with Dr. Dhanyamraju indicated that she had high anxiety, little interest in doing things, difficulty focusing, low energy, and suicidal ideation. *Id.* at 375–87. Otherwise, her physical examinations reported nothing other than normal findings. *Id.* Dr. Dhanyamraju recommended Plaintiff see a psychologist for further evaluation and treatment. *Id.* at 376, 384. On September 8, 2022, at a follow-up appointment, Plaintiff reported during her depression screening that she had low energy, little energy, and trouble concentrating, but no thoughts of suicidal ideation. *Id.* at 367–68. At that check-up, Plaintiff also indicated that she was having some migraines but otherwise had no other issues. Her physical exam reflected normal findings. *Id.* At a telehealth appointment on October 3, 2022, Plaintiff mentioned she was taking Cymbalta for depression but that it was not effective. *Id.* at 364–65. She also reported that she was receiving counseling and that her mental health provider had recommended she take Prozac. *Id.* On December 8, 2022, Plaintiff reported to Dr. Dhanyamraju that her depressive symptoms were improved, and she was taking medication as directed.[10] *Id.* at 362–63.

On March 27, 2023, Plaintiff was seen for lab testing, during which her physical exam was normal, and she reported some anxiety and depression, but no suicidal ideation. *Id.* at 357–59. She appears to have reported to Dr. Dhanyamraju that her psychiatrist recommended she re-start Prozac and that she had agreed to do so. *Id*. Approximately a month later, Dr.

[10] Her reported medications at this visit included Cymbalta but did not include Prozac. *Id.* at 366.

Dhanyamraju screened Plaintiff for depression, during which Plaintiff reported feeling tired, having little interest in doing things, feeling depressed, feeling down about herself, and having trouble focusing for periods of times. *Id.* at 353–56. Plaintiff also reported suicidal ideation. *Id.* Plaintiff reported taking Lexapro, that she was receiving counseling, and that her psychiatrist had recommended trying Prozac. *Id.* Dr. Dhanyamraju discussed with Plaintiff that she would need further treatment regarding her severe depression. *Id.* Plaintiff saw Dr. Dhanyamraju again on October 31, 2023, and December 5, 2023, for concerns around her anxiety and depression. *Id.* at 759–65. By December, she had stopped taking her SSRI and reported feeling down, hopeless, and had little energy. *Id.* She said she had trouble concentrating but that she did not have suicidal ideation. *Id*. Dr. Dhanyamraju encouraged her to continue therapy and reminded her to schedule an appointment with a psychiatrist. *Id.* On May 1, 2024, Plaintiff saw Dr. Dhanyamraju for a physical check-up. *Id.* at 752–55. She indicated she had stopped all medication for mental health but that she still had depressive symptoms. *Id.* The records also indicated that Plaintiff was planning to see a mental health provider the following day. *Id.*

There are no additional records from Sun River Health post-dating May 1, 2024, that touch on mental health. There are no records from any other therapist or psychiatric provider, although it appears that Plaintiff had such providers based on what she reported to Dr. Dhanyamraju and based on her prior application for disability benefits, which was denied.

A. <u>State Agency Consultants and Independent Examiners</u>

There was a consultative review of Plaintiff's records, but no consultative exam requested concerning Plaintiff's mental health. Psychology consultant, Dr. P. Fernandez, first reviewed Plaintiff's medical records, including records from Sun River Health and Plaintiff's

questionnaires and reports. *Id.* at 99–101. Dr. Fernandez found that although Plaintiff did have physical symptoms—her migraines and hypertension—that impacted her psychiatric symptoms of depression, she still reported being able to manage daily activities of caretaking without substantial limitations. *Id.* at 100–01. In conjunction with Plaintiff's lack of abnormal findings at physical examinations with her provider, Dr. Fernandez found this evidence to only be demonstrative of a nonsevere psychiatric impairment. *Id.* Also in connection with Plaintiff's second application, medical consultant, Dr. M. Angelotti, reviewed Plaintiff's medical records. *Id.* at 101–04. Dr. Angelotti ultimately determined that although the records indicated hypertension, headaches, cervical disease, and obesity, Plaintiff was often found to not be in acute distress, responding to medication, and with no abnormal test results. *Id.* An RFC for light work was found appropriate for Plaintiff. *Id.*

At the reconsideration level, psychiatric consultant, Dr. R. Ochoa, considered additional medical records, along with Plaintiff's application, including records from Crystal Run Healthcare, Middletown Medical, and Sun River Health. *Id.* at 105–06. Dr. Ochoa agreed with Dr. Fernandez's findings, noting that although Plaintiff's herniated disc impacted her mental health, she demonstrated an ability to care for herself (light housework, shop, manage money, and drive) and her daughter. *Id.* at 107–08. Dr. Ochoa also highlighted that Plaintiff lacked acute distress upon physical examination by her providers throughout 2023. *Id*. Medical consultant Dr. J. Sharif-Najafi also concurred with Dr. Angelotti's findings, noting that although Plaintiff's records showed her diagnoses of hypertension, headaches, cervical disease, and obesity, there were no abnormal examinations or test results, and she had full range of motion in 2023. *Id.* at 109–112.

It does not appear that either psychological consultative examiner, Dr. Fernandez or Dr. Ochoa, had access to records from any treating psychiatrist or mental health counselor.

## III. The Commissioner's Decision

ALJ Stacchini found that Plaintiff was not disabled within the meaning of the Social Security Act. Although he found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the amended date, February 8, 2023, and that Plaintiff had several severe impairments—degenerative disc disease, obesity, hypertension, major depressive disorder, and anxiety—he ultimately concluded that Plaintiff was not disabled. *Id.* at 10–24.

With regard to mental health, ALJ Stacchini considered the four broad areas of functioning[11] outlined in Paragraph B. *Id.* He ultimately found that Plaintiff only had mild limitations in each of the four areas. *Id.* He considered the opinions of state agency consultants, Dr. Fernandez and Dr. Ochoa, in reaching these conclusions. *Id.* Additionally, in the alternative, ALJ Stacchini considered the Paragraph C criteria,[12] finding that Plaintiff's medical record also failed to establish the existence of Paragraph C criteria based on the opinions of Dr. Fernandez and Dr. Ochoa. *Id.*

At step four, the ALJ found that Plaintiff had an RFC to perform light work with the following limitations: "except occasionally climb ramps and stairs; never climb ropes, ladders, or scaffolds; occasional balance, stoop, kneel, crouch, and crawl; frequent reaching, handling, and fingering; she is able to understand, remember, and carryout simple tasks with regular breaks at

[11] The four functioning areas include: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting or maintaining pace"; and (4) "adapting or managing oneself." (Admin. Record, at 10–24); 20 C.F.R. Part 404, Subpart P, Appendix 1.

[12] Paragraph C criteria include the criteria in listings 12.02, 12.03, 12.04, 12.06, 12.15, which cover neurocognitive disorders; schizophrenia spectrum and other psychotic disorders; depressive, bipolar, and related disorders; anxiety and obsessive-compulsive disorders; and trauma- and stressor-related disorders.

approximately two-hour intervals." *Id.* In reaching this conclusion, the ALJ relied on Plaintiff's bevy of daily activities, focusing largely on her caretaking of her special needs daughter, medical examinations noting a normal physical appearance, and largely normal physical test results and largely unconcerning mental health assessments from Sun River Health. *Id.* The ALJ pointed to evidence on the administrative record where Plaintiff had denied having anxiety and depression and Dr. Fernandez's and Dr. Ochoa's findings that Plaintiff's mental limitations were mild. *Id.*

At step five, the ALJ considered Plaintiff's age, work experience, education, and RFC, finding that Plaintiff was 41 at the time the application was filed (a "younger individual" under 20 C.F.R. 416.963), had a limited education, and no relevant work experience. *Id.* Based on the vocational expert's testimony at the hearing, ALJ Stacchini found that an individual with Plaintiff's RFC, age, education, and work history could perform two jobs—cleaner housekeeping and routing clerk—as classified by the Dictionary of Occupational Titles ("DOT"). *Id.* Based on these findings, ALJ Stacchini found that Plaintiff had not been under a disability from February 8, 2023, to the date of the decision (August 15, 2024).

## **LEGAL STANDARD**

A court reviewing a final decision by the Commissioner must, as a threshold matter, determine whether the ALJ provided the plaintiff with a full and fair hearing under the Secretary's regulations and fully and completely developed the administrative record. *See Intonato v. Colvin*, No. 13 Civ. 3426, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (internal citation omitted). The duty to develop the record requires the ALJ "to ensure that the record contains sufficient evidence to make a determination." *Bussi v. Barnhart*, No. 1 Civ. 4330, 2003

WL 21283448, at *8 (S.D.N.Y. June 3, 2003). The ALJ must obtain additional information "when the evidence as a whole is not complete enough for the ALJ to make a determination." *Id.* (citation omitted). An ALJ's failure to adequately develop the record is an independent ground for vacating the ALJ's decision and remanding the case. *Moran v. Astrue*, 569 F.3d 108, 114–15 (2d Cir. 2009).

Once a court is satisfied that the plaintiff was afforded a full hearing and the record is fully developed, a court then assesses the Commissioner's conclusions. In doing so, a court is limited to determining whether the Commissioner's conclusions were (1) "supported by substantial evidence in the record," and (2) "based on [application of the] correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

Substantial evidence is "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. § 423(d)(5)(B). The ALJ's decision must set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." *Id*. § 405(b)(1). It must do so "with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Herrera v. Comm'r of Soc. Sec.*, No. 20 Civ. 7910, 2021 WL 4909955, at *5 (S.D.N.Y. Oct. 21, 2021) (citing *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)).

## DISCUSSION

Plaintiff asserts that the ALJ failed to properly develop the record, particularly as to Plaintiff's mental health by failing to order a consultative psychiatric exam. Because this is a threshold issue, I address it first.

An ALJ has failed to fulfill his duty to develop the record when he has not requested requisite medical records from treating physicians, failed to locate or obtain updated functional assessments, or failed to reconcile obvious gaps in the record. *Faure v. Comm'r of Soc. Sec.*, 685 F. Supp. 3d 247, 262–63 (S.D.N.Y. 2023) (finding that where an ALJ failed to obtain an updated functional assessment—beyond outdated reports from nonexamining consultants—on a plaintiff's mental health, which clearly was cyclical in nature, the ALJ had failed to develop the record); *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (finding that where proper follow-up requests were not sent to treating providers, the ALJ had failed to properly develop the record); *Romero v. Comm'r of Soc. Sec.*, No. 18 Civ. 10248, 2020 WL 3412936, at *15 (S.D.N.Y. June 22, 2020) (finding that where there was only treatment records and a vague functional capacity assessment from a single consultative examiner, the ALJ failed to develop the record); *Thomas v. Comm'r of Soc. Sec.*, No. 20 Civ. 5086, 2022 WL 523544, at *6 (E.D.N.Y. Feb. 22, 2022) (finding that where there were references to prior treatment in the administrative record, but there were no records reflecting such treatment, the ALJ failed to develop the record by failing to request these records).

Additionally, although an ALJ is not always required to order a consultative exam, such an exam is typically deemed necessary when there is conflicting evidence or a lack of evidence such that the administrative record is insufficient for the ALJ to make a determination. *Tankisi v.*

*Comm'r of Soc. Sec.*, 521 Fed. App'x. 29, 32 (2d Cir. 2013); *see also Caban v. Comm'r of Soc. Sec.*, No. 18 Civ. 929, 2019 WL 4254000, at *4–6 (E.D.N.Y. Sept. 9, 2019) (finding that where a plaintiff's medical records were inconsistent related to her psychiatric symptoms, including screenings, prescriptions, and the plaintiff's own denial of information regarding her psychiatric symptoms at the hearing, remand was warranted for the ALJ to develop the record and, if needed, order a consultative exam); *Dimola v. Comm'r of Soc. Sec.*, No. 20 Civ. 3808, 2022 WL 1645688, at *5–6 (E.D.N.Y. May 24, 2022) (finding that the ALJ failed to develop the record by failing to contact other identified physicians and/or order a consultative exam when there was a clear gap in the medical record). Whether there is sufficient evidence on the record is a matter left to the ALJ's discretion under the Administration's regulations. 20 C.F.R. § 416.919(a) ("If we cannot get the information we need from your medical sources, we *may* decide to purchase a consultative examination" (emphasis added)); *see also Cuspert v. Acting Comm'r of Soc. Sec.*, No. 20 Civ. 10583, 2022 WL 4355128, at *9 (S.D.N.Y. Sept. 20, 2022). However, where there are significant gaps, such as the lack of a functional assessment, or internal inconsistences, the ALJ must seek additional information to complete the administrative record. *Faure v. Comm'r of Soc. Sec.*, 685 F. Supp. 3d 247, 262–63 (S.D.N.Y. Aug. 7, 2023).

Here, it appears that the ALJ did not fully develop the record, because the Sun River Health records refer to a treating psychiatrist and a treating mental health counselor during the relevant period, yet there are no records from those providers. In particular, Plaintiff's medical records indicate that she had a psychiatrist and/or therapist prior to February 28, 2022. (Admin. Record at 383). And, on October 31, 2023, Plaintiff's medical records indicate that she was "[c]urrently receiving therapy" and that she was previously treated by a psychiatrist. *Id.* at 763–

64. Records from May 1, 2024, indicate she had an appointment with a psychiatrist the following day. *Id.* at 752–55. And, although Plaintiff testified at the hearing that she did not see and had not in the past seen a mental health care provider, it appears she is not a reliable reporter of her mental health care, because there were mental health treatment records referenced in connection with her first application for disability benefits, including treatment from therapist Christine Oriani, LMSW and at Access: Supports for Living, Inc. and references to mental health care in the 2022–2024 period. *Id*. at 47–55, 78, 383–84, 763–64, 752–55.

These conflicting notes and an absence of therapy notes or a psychiatric assessment leave a gap in the administrative record as to the precise treatment Plaintiff received for depression and anxiety during the relevant period and the nature and severity of her mental health conditions during this period. That is, it is unclear whether Plaintiff has been treated by a therapist/counselor and/or psychiatrist from February 2023 to the date of the hearing before the ALJ.

Additionally, the ALJ noted in his decision that several times, upon physical examination by Plaintiff's treating physicians, Plaintiff's affect and speech were normal, with that she denied symptoms of anxiety and depression. *Id.* at 20–21. However, at other appointments, Plaintiff's providers noted she had a flat, depressed affect, an inconsistency the ALJ himself seemed to acknowledge when he included both observations in his analysis. *Id.* at 20, 370, 376, 753, 761. Further, at times Plaintiff reported suicidal ideations, a lack of interest in daily activities, and exhaustion during her depression screening. *Id.* at 353, 763–64. These additional inconsistencies support a finding that there is a gap in the record about the severity Plaintiff's mental impairments and the treatments she has or has not been receiving. The opinions from

state agency consultants are not a substitute for these missing records, because these consultants did not examine Plaintiff and only reviewed Plaintiff's submitted records at the initial and reconsideration levels when reaching their conclusion that Plaintiff had only mild mental limitations and did not have any records from mental health treatment providers that appear to exist based on references to them in the record. As a result, the ALJ failed to properly develop the record as it relates to Plaintiff's mental impairments. *Faure*, 85 F. Supp. 3d at 262; *Thomas*, 2022 WL 523544, at *6.

Additionally, although the Plaintiff is represented by counsel and counsel did not request a consultative exam, the ALJ should have considered ordering a consultative exam rather than relying on an agency doctor's review of the record, particularly when Plaintiff's treatment records are notably sparse and she appears to have had sporadic treatment by mental health providers. *Caban*, 2019 WL 4254000, at *4–6; *Dimola*, 2022 WL 1645688, at *5–6. Although the Commissioner asserts that the ALJ was relieved of this duty when he confirmed that Plaintiff's counsel was not asking for a consultative exam, this argument is not persuasive. The record reflects that there were outstanding medical records at the time of the hearing and it appears Plaintiff's counsel may have thought the missing records, which include Sun River Health records, would provide information about Plaintiff's mental health treatment.[13] (Admin. Record, at 29-35). Those records, however, revealed that there may be additional treatment records relevant to Plaintiff's mental health—something her attorney may not have known at the time of the hearing. *Compare Munnings-Bah v. Saul*, No. 19 Civ. 3510, 2020 WL 5755065, at

[13] The ALJ stated at the hearing that the record had no gaps; however, this conclusion was reached prior to several of the medical records being submitted by Plaintiff's counsel, including Sun River Health and Crystal Run Healthcare. *Id.* at 34–35.

*13–14 (S.D.N.Y. Sept. 14, 2020) (finding that where there were obvious missing records—records and treatments referenced in the record, but not appearing in the record themselves—the ALJ had incomplete information to evaluate the plaintiff's mental impairments), *with Bellantyne T. v. Comm'r of Soc. Sec.*, No. 23 Civ. 11182, 2025 WL 551820, at *8 (S.D.N.Y. Feb. 19, 2025) (finding that where there were no obvious gaps in the record, no clarity on what substantive evidence was missing, and the plaintiff's counsel had informed the ALJ that the there were no outstanding records at the hearing, the ALJ had fulfilled the duty to develop the record), *and Assenheimber v. Comm'r of Soc. Sec.*, No. 2015 WL 5707164, at *4 (Sept. 29, 2015) (weighing counsel's failure to object to evidence in the record when determining that the ALJ did develop the record, because the record itself had no obvious gaps and the purported missing evidence would not have been relevant). *See also Thomas*, 2022 WL 52344, at *6 ("Regardless, the statements by a plaintiff's counsel do not relieve the ALJs of their duty to develop the record *where there exist clear gaps in the record*." (emphasis added)) (collecting cases).

Further, the Commissioner's reliance on *Curley v. Commissioner of Social Security* for the proposition that an attorney's failure to identify missing records is sufficient to have a developed record is misplaced because in that case there was no gap in the record, as there is here. 808 Fed. App'x 41, 44 (2d Cir. 2020).

Finally, the ALJ's duty to fully develop the record is an affirmative one that is not waived even when a plaintiff is represented. *Moran*, 569 F.3d at 112; *Rosa*, 168 F.3d at 79 ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel . . . or by a

paralegal'" (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). Courts have found that this obligation is heightened where one of the disabilities at issue is a mental or psychiatric impairment. *See, e.g.*, *Mangual v. Comm'r of Soc. Sec.*, 600 F. Supp. 3d 313, 324 (S.D.N.Y. 2022). Thus, the fact that Plaintiff is represented by counsel and was represented by counsel at the hearing does not excuse the failure of the ALJ to develop the record by seeking additional mental health treatment records and/or ordering a consultative exam upon learning that there might be missing mental health treatment records.

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for judgment on the pleadings is GRANTED, and the action is hereby remanded to the Commissioner for the ALJ to properly develop the administrative record, including to determine whether there are in fact mental health treatment records from another provider and, if not, to consider ordering a consultative exam.

**The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 12.**

**SO ORDERED.**

DATED: New York, New York
August 4, 2026

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge